**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DIEGO ZAPATA** **CIVIL ACTION**

**VERSUS** **NO. 06-0212**

**BURL CAIN, WARDEN** **SECTION "B"(6)**

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, the court finds that the instant action should be **DISMISSED** as untimely.

**PROCEDURAL HISTORY**

On May 14, 1997, petitioner, Diego Zapata, presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was found guilty, following trial by jury, of possession

with the intent to distribute heroin. On June 13, 1997, petitioner was sentenced to life imprisonment.

Pursuant to petitioner's appeal, on May 27, 1998, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence. *State v. Zapata*, 713 So.2d 1152 (La. App. 5 Cir. 1998). On November 6, 1998, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and life sentence final. *State v. Zapata*, 727 So.2d 443 (La. 1998).

On September 10, 2001, petitioner, through private counsel, filed an application for post-conviction relief with the state district court. Petitioner's effort in this regard culminated on June 4, 2004, when the Louisiana Supreme Court denied his writ application. *State v. Zapata*, 876 So.2d 72 (La. 2004).

On December 2, 2005, petitioner filed the instant action for federal habeas corpus relief. In its response, the State argues that petitioner's habeas application should be dismissed as time-barred. For the following reasons, this court agrees.

**ANALYSIS**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C. § 2254, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of his time for seeking review.[1]

[1]The AEDPA applies to this case as it was filed after the enactment of the AEDPA, or after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2060, 138 L.Ed.2d 481 (1997).

*See* 28 U.S.C. §2244(d)(1) (West 2007). While petitioner's conviction became final on November 6, 1998, his time for seeking review did not expire until 90 days later, on February 4, 1999, when his time for filing a petition for a writ of certiorari with the United States Supreme Court expired. *See* Sup.Ct.R. 13(1); *see also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000); *Habteselassie v. Novak*, 209 F.3d 1208, 1209 (10th Cir. 2000); *Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000). Thus, petitioner had a year from February 4, 1999, until approximately February 4, 2000, to timely seek federal habeas corpus relief.

Petitioner did not file the instant action until over five years later, on December 2, 2005. Thus, petitioner's federal habeas corpus application must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. § 2244(d)(2). Under that statutory provision, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

In this case, petitioner did not seek post-conviction relief until September, 2001, over a year after his February 4, 2000 deadline had passed. Thereafter, when his post-conviction proceedings were concluded by virtue of the Louisiana Supreme Court's denial of his writ application on June 4, 2004, *see State v. Zapata*, 876 So.2d 72 (La. 2004), petitioner waited almost a year and a half, until December 2, 2005, before filing the instant action for federal

habeas corpus relief. Clearly, petitioner's one-year prescriptive period under the AEDPA had expired. Thus, the instant action is time-barred absent a basis for equitable tolling.

Equitable tolling is justified only in "'rare and exceptional circumstances.'" *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164, 121 S.Ct. 1124, 148 L.Ed.2d 991 (2001), *quoting Davis v. Johnson*, 158 F.3d 806 (5th Cir 1998), *cert. denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999). It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *citing Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). The evidence must show that the applicant, though deterred by matters outside his or her control, was nevertheless diligent in his or her pursuit of § 2254 relief. *Coleman*, 184 F.3d at 403.

Petitioner argues that he is entitled to equitable tolling because he relied, to his detriment, upon counsel to file the necessary pleadings to ensure that he did not run afoul of the AEDPA's one-year deadline. In support of his position, petitioner cites *Wessinger v. Cain*, 358 F.Supp.2d 523 (M.D. La. 2005), stating that *Wessinger* "fits his case squarely, in that the same identical situation and circumstances are present in his case."[2]

---

[2]*See* Federal rec., doc. # 6, Petitioner's Response to the State's Answer to Habeas Corpus Petition, p. 3.

*Wessinger*, 358 F.Supp.2d at 525, involved a situation where the petitioner, in June, 1997, was found guilty of two counts of first degree murder and was sentenced to death on both counts. In May, 2000, after petitioner's direct appeal proceedings had come to an end, the Louisiana State Bar Association's Committee on Post-Conviction Pro Bono Representation ("LSBA") recruited private counsel, Winston Rice, of the law firm, Rice, Fowler, Rodriguez, Kingsmill and Flint, to represent petitioner on a pro bono basis in connection with his post-conviction proceedings. *Id*. at 528.[3] Mr. Rice, however, due to a "debilitating neurological and physiological disorder","did very minimal work on the case",[4] ultimately filing "a Motion for Continuance of the Deadline to file the State Post Conviction Petition", which the state district court granted, providing an extension until December 29, 2000. *Id*. at 528. The filing of this motion for an extension of time was apparently "the last action taken by Mr. Rice on behalf of petitioner." *Id*. at 528-529. The court explained:

> During the period from October to December, Mr. Rice's health worsened. In conjunction with this decline, Mr. Rice was asked to leave his firm. Despite these events, Mr. Rice did not seek to withdraw as petitioner's counsel though little to no work was performed on petitioner's case. Moreover, Mr. Rice did not inform petitioner of his condition or seek a substitution of counsel for petitioner.

---

[3]Under the provisions of LSA-R.S. 15:149.1, post-conviction counsel is generally appointed to represent inmates who have been sentenced to death.

[4]The court observed that Rice met with the petitioner twice over the summer, had a law student summarize the trial record, and attended a seminar and sought the advice of consultants at the Louisiana Crisis Assistance Center on three occasions.

> Finally, on December 5, 2000, ONE DAY before petitioner's federal statute of limitations was to expire, Mr. Rice wrote a letter to the head of the LSBA project, Judge Ginger Berrigan. In the letter, Mr. Rice explained that he was suffering from "neurologic and biochemical disorders" and that he had become "disabled without income." He confided that he was unable to further assist his client (petitioner), and asked for aid in securing a replacement counsel as his former law partners wanted "nothing to do with the case." Further, Mr. Rice admitted in the letter that he had not notified his client of the insurmountable obstacles he was facing, or that he was unable to perform the function of an attorney.

*Id*. at 529 (emphasis original) (footnotes omitted).

Shortly following Judge Berrigan's receipt of Mr. Rice's letter, new counsel was recruited to represent petitioner and, on December 15, 2000, an "Ex Parte Motion for Substitution of Counsel" was filed. The AEDPA's one-year prescriptive period, however, expired nine days earlier, on December 6, 2000. Accordingly, when petitioner, following the conclusion of his state post-conviction proceedings, filed a petition in federal court seeking habeas corpus relief, the federal district court acknowledged that "[s]trict application of §2244 dictates that petitioner's federal writ of habeas is time barred, as one year elapsed before he sought collateral review." *Id*. at 526. The court, however, "questioned the issue of timeliness sua sponte", examining the general law with respect to equitable tolling in the context of alleged attorney error. *Id*. The court reasoned:

> While the normal errors made by attorneys may not justify equitable tolling of the statute of limitations for filing a habeas petition, extreme situations, such as abandonment, require a different result. Accordingly, an attorney's conduct, if it is sufficiently egregious, may constitute the sort of "extraordinary circumstances" that would justify the application of

> equitable tolling to the one year limitations period. As detailed above, petitioner reasonably relied on the silence of his counsel, Mr. Rice, to his detriment. An attorney's intentional deceit may warrant equitable tolling of statute of limitations on a motion for collateral relief if a petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations. Silence has been equated with deception in the Fifth Circuit when there is a legal or moral duty to speak. The attorney client relationship contains both a legal and moral duty to speak. Failure of petitioner's attorney to do so merits equitable tolling.

*Id*. at 529-530 (footnotes omitted).

Based upon the above reasoning, the court concluded:

> Mr. Rice did not make any attempt to contact his own client to inform him of his incapacity or inability to further pursue petitioner's action. Based on the foregoing, petitioner had no reason to doubt his counsel was not following through with every diligent effort on his part. Moreover, petitioner had met with Mr. Rice twice in the summer, before his condition worsened, and was not told by Mr. Rice of any change in Rice's health condition thereafter. As previously stated, reasonable reliance on such silence equates to deception, and merits equitable tolling.

*Id*. at 531 (footnote omitted).

Despite petitioner’s contention to the contrary, the applicable facts in the instant matter are quite different from the above-described facts at issue in *Wessinger*. While Wessinger’s counsel never placed Wessinger on notice that his representation, at the very least, was faltering, such notification was not lacking in the instant matter. Petitioner, by virtue of counsel’s letter dated July 14, 2004, was notified that counsel’s representation of him had ended. Specifically, petitioner was informed:

> Enclosed please find a copy of the Louisiana Supreme Court's ruling in your case. Regrettably, the Court denied your petition for certiorari. **This concludes the work that we contracted to do with you**. Should you require any additional assistance from us or have any questions, please feel free to contact me. [Emphasis added.][5]

Thereafter, in a letter dated December 31, 2004, counsel, in response to petitioner's "Federal Habeas inquiry", informed:

> [W]e have not contracted with you to pursue federal habeas relief on your behalf. The original commitment on our behalf for which we were paid $10,000 was for a state appeal and that does not include post conviction relief. We pursued state post conviction relief for you at no additional charge. We ordinarily charge $10,000 for each process. Federal Habeas is very time consuming, and we can not undertake proceedings of that magnitude for the original $10,000 fee. I hope that you understand the firm's position on this issue. If you would like us to assist you, we will require a new contract and our fee is $10,000.[6]

Finally, in response to petitioner's correspondence dated June 5, 2005, counsel, in a letter dated June 15, 2005, informed:

> We previously sent you two letters which I have enclosed letting you know that we would not be filing Federal Habeas on your behalf without a contract to render those legal services and without payment in the amount of $10,000.00 for those services. I am sorry if you misunderstood our position regarding this matter. I am also sorry that you did not pursue your AEDPA in a timely manner, **but the firm gave you ample notice that it**

[5]A copy of counsel's July 14, 2004 letter is attached to petitioner's habeas application (doc. # 1) as Exhibit I.

[6]A copy of counsel's December 31, 2004 letter is attached to petitioner's habeas application (doc. # 1) as Exhibit J.

> **would not undertake that responsibility for you**. I was not privy to your original discussions with Mr. Regan regarding your appeal. Your version of that meeting and Mr. Regan's are different. Please understand that the firm is a business that does not operate on a pro bono basis. The firm has already performed $20,000.00 worth of work (the appeal and post conviction relief) for $10,000.00.
>
> We also pursued the Pardon Board remedy for you and you are also dissatisfied with that as well. The firm is willing to refund the $1,000.00 fee to your family for the Pardon Board Application process even though we completed that work on your behalf. We absolutely disagree with your contention that we obligated ourselves to file Federal Habeas for you. We do not have a contract or payment to perform those services on your behalf, thus, we were not obligated to perform those services for you. This is our continued position on this issue and that position will not change no matter how many letters you send us attempting to convince us that we failed to file any pleadings on your behalf. [Emphasis added.][7]

This court shall assume, *arguendo*, that via silence on the part of counsel, petitioner reasonably believed that counsel was representing him in connection with his state post-conviction proceeding and that petitioner reasonably relied upon counsel to timely file his state post-conviction application. As such, in accordance with *Wessinger*, *supra*, the court shall equitably toll the time between February 4, 1999, when petitioner's time for filing a writ of certiorari with the United States Supreme Court expired and his one-year statute of limitations would have commenced to run, and September 10, 2001, when counsel filed, on petitioner's behalf, an application with the state district court for post-conviction relief.

---

[7] A copy of counsel's June 15, 2005 letter is attached to petitioner's habeas application (rec. doc. # 1) as Exhibit K.

Commencing September 10, 2001, and continuing until June 4, 2004, petitioner's statute of limitations remained tolled not as a result of any equitable consideration, but because his post-conviction proceeding remained pending within the state court system. On or about July 14, 2004, via counsel's correspondence, petitioner was notified not only that the Louisiana Supreme Court had denied his writ application and therefore, his bid for state post-conviction relief had come to an end, but also, that he was no longer represented by counsel. At that point, no further basis existed to warrant an equitable tolling of prescription. Petitioner was clearly placed on notice that he was responsible for any future attacks on his state court conviction and sentence, but rather than dilgently pursuing federal habeas corpus relief, petitioner waited almost a year and a half, until December 2, 2005, approximately five months after prescription had expired, before filing the instant action. Petitioner's claim that he had no knowledge of the law or how to proceed in filing a pro se habeas application is insufficient to warrant further equitable relief. *See Flores v. Quarterman*, 467 F.3d 484, 486 (5th Cir. 2006), *cert.* denied, __ S.Ct. __, 2007 WL 120855 (2007), *quoting Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir.2002), *cert. denied*, 538 U.S. 947, 123 S.Ct. 1621, 155 L.Ed.2d 489 (2003) ("We have previously 'made it clear that a lack of knowledge of the law, however understandable it may be, does not ordinarily justify equitable tolling.'").

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Diego Zapata, be **DENIED WITH PREJUDICE** as untimely.[8]

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __29th__ day of _______June_________, 2007.

LOUIS MOORE, JR.
United States Magistrate Judge

[8]In light of the court's finding that the instant action should properly be dismissed with prejudice as untimely, there is no need to address the State's alternative argument that the matter should be dismissed without prejudice due to petitioner's alleged failure to exhaust his state court remedies.